### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**ROBERT S. KRODINGER**           **CIVIL ACTION**

**VERSUS**           **NO.  16-2069**

**JASON KENT, WARDEN**           **SECTION "J"(2)**

### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases.  Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.  See 28 U.S.C. § 2254(e)(2).[1]  For the following reasons, I recommend that the instant petition for habeas corpus relief be **DISMISSED WITH PREJUDICE**.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

The petitioner, Robert S. Krodinger, is incarcerated in the Dixon Correctional Institute in Jackson, Louisiana.[2]  On July 9, 2009, Krodinger and a co-defendant, Michael L. Marshall, were indicted by a grand jury in Orleans Parish for three counts of

---

[1] Under 28 U.S.C. § 2254(e)(2), whether to hold an evidentiary hearing is a statutorily mandated determination.  Section 2254(e)(2) authorizes the district court to hold an evidentiary hearing only when the petitioner has shown either that the claim relies on a new, retroactive rule of constitutional law that was previously unavailable, 28 U.S.C. § 2254(e)(2)(A)(i), or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence, 28 U.S.C. § 2254(e)(2)(A)(ii); and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. 28 U.S.C. § 2254(e)(2)(B).

[2] Rec. Doc. No. 3.

aggravated rape, comprised of one count each of oral, anal and vaginal rape.[3]  Both

defendants entered not guilty pleas to the charges on July 14, 2009.[4]  The Louisiana

Fourth Circuit Court of Appeal summarized the facts determined at trial in relevant part

as follows:

> Michael Marshall met S.B. in 2008 at an Alcoholics Anonymous ("AA")
> meeting.  S.B. identified herself at trial as a recovering alcoholic but at the time
> of the incident she was not in recovery.  [. . .]  The victim stated she cut off ties
> with Marshall in November 2008 because he made inappropriate sexual
> comments, which made her extremely uncomfortable.
> 
> [. . .]
> 
> On the day in question, it is undisputed that Marshall was bringing S.B.
> to detox at University Hospital where she would begin rehab under controlled
> conditions.  Her rehab treatment was going to last at least thirty days.  Marshall
> drove S.B. to the detox facility on March 12, 2009 because S.B. did not have
> transportation.  S.B. testified that she drank the day and night before her
> scheduled admission to detox because she knew "this was [her] last time
> drinking."
> 
> [. . .]
> 
> On March 12, 2009, Krodinger accompanied Marshall to drug court in
> Poplarville, Mississippi.  Afterwards, Marshall and Krodinger drove Marshall's
> Jeep Cherokee to the victim's house.  En route to New Orleans, Krodinger drove
> Marshall's Jeep, S.B. sat behind the driver's seat, and Marshall sat next to her.
> The victim testified that as the Jeep proceeded onto Highway 11 Bridge, Marshall
> began removing the victim's clothes.  She testified that she resisted his advances
> and ordered him to stop.  Marshall, however, overpowered her and vaginally
> raped her.  When the Jeep reached the end of the bridge, Krodinger pulled to the
> side of the interstate.  Krodinger straddled the vehicle console and anally raped
> the victim while Marshall forced her to perform oral sex on him.  As she was
> raped, the victim stated she heard a knock on the vehicle window.  She then heard
> a voice asking if anyone needed help.  The victim crawled out of the vehicle into
> the ditch on the side of the road and yelled: "They're raping me!"  At trial, the
> victim identified the defendants.  She denied ever having consensual sex or
> having a romantic or sexual relationship with Marshall prior to the rape.  She also
> denied asking the defendants to have sex with her on the way to detox.

---

[3]St. Rec. Vol. 1 of 6, Indictment, 10/29/09; Grand Jury Return, 10/29/09.

[4]St. Rec. Vol. 1 of 14, Minute Entry, 7/14/09.

[. . .]

Chris Bertholot, a Motorist Assistance Patrol Operator, testified that on the morning of March 12, 2009, he encountered a vehicle stopped on I-10 between Michoud and 510 westbound. The vehicle caught his attention because the vehicle's flashers were not activated. Bertholot parked behind the vehicle and sounded his horn prior to approaching the driver's side of the vehicle. He noticed a man (Marshall) seated in the front seat fastening his pants and a leg sticking out between the front and rear seats. Bertholot asked Marshall if everything was okay. Marshall said everything was fine. At that point Bertholot returned to his van, and he started filling out paperwork. As he did so, a naked woman jumped out the back of the vehicle yelling that she was being raped. Bertholot then pulled his van in front of the vehicle to block its escape. Bertholot demanded that the driver surrender his vehicle keys, which he did. Bertholot ordered the defendants to stand at the rear of the van while he placed the victim on the side of the van to shield her from traffic. Bertholot then called 911 and reported the incident.

State v. Krodinger, 128 So.3d 270, 273-276 (La. App. 4th Cir. 2012); State Record Volume 7 of 14, Louisiana Fourth Circuit Court of Appeal Opinion, 2012-KA-0134, pages 2-8, February 27, 2013.

Krodinger and Marshall were tried jointly before a jury on March 28, 29 and 30, 2011.[5] The jury returned a verdict of not guilty for both men on the first count of aggravated rape (oral).[6] The jury found both men guilty on counts two and three of the responsive verdicts of simple rape (anal) and simple rape (vaginal).

---

[5]St. Rec. Vol. 1 of 14, Trial Minutes, 3/28/11; Trial Minutes, 3/29/11; Trial Minutes, 3/30/11; St. Rec. Vol. 10 of 14, Trial Transcript, 3/28/11; St. Rec. Vol. 11 of 14, Trial Transcript, 3/29/11; Trial Transcript, 3/30/11.

[6]St. Rec. Vol. 1 of 14, Trial Minutes, 3/30/11; St. Rec. Vol. 3 of 14, Jury Verdict (count 1), 3/30/11; Jury Verdict (count 2), 3/30/11; Jury Verdict (count 3), 3/30/11; Jury Verdict (Marshall - count 1), 3/30/11; Jury Verdict (Marshall - count 2), 3/30/11; Jury Verdict, (Marshall - count 3), 3/30/11.

At a hearing on August 19, 2011, the state trial court denied Krodinger's motions for new trial and post-verdict judgment of acquittal.[7]  After waiver of legal delays, the court sentenced Krodinger and Marshall each to concurrent sentences of 25 years in prison on counts two and three without benefit of parole, probation or suspension of sentence.[8]  The court also denied Krodinger's motions to reconsider the sentence.[9]

On direct appeal to the Louisiana Fourth Circuit, Krodinger's appointed counsel asserted that the state trial court erred in allowing the introduction of a DNA certificate of analysis as evidence without the author of the certificate present for cross-examination.[10]  Krodinger filed a pro se supplemental brief in which he asserted the following errors:[11] (1) The state trial court erred in failing to rule on defendants' motion to sever. (2) The evidence was insufficient to support the convictions on two counts of simple rape.

---

[7]St. Rec. Vol. 1 of 14, Sentencing Minutes, 8/19/11; St. Rec. Vol. 12 of 14, Sentencing Transcript, 8/19/11; St. Rec. Vol. 3 of 14, Motion for New Trial, 8/19/11; Motion for Post-Verdict Judgment of Acquittal, 8/19/11.

[8]St. Rec. Vol. 1 of 14, Sentencing Minutes, 8/19/11; St. Rec. Vol. 12 of 14, Sentencing Transcript, 8/19/11.

[9]St. Rec. Vol. 1 of 14, Sentencing Minutes, 8/19/11; St. Rec. Vol. 12 of 14, Sentencing Transcript, 8/19/11; St. Rec. Vol. 3 of 14, Trial Court Order, 8/30/11; Motion to Reconsider Sentence, 8/30/11.

[10]St. Rec. Vol. 12 of 14, Appeal Brief, 2012-KA-0134, 3/23/12.

[11]St. Rec. Vol. 12 of 14, Supplemental Appeal Brief, 2012-KA-0134, 6/4/12; St. Rec. Vol. 7 of 14, Motion for Leave, 2012-KA-0134, 4/3/12.

The Louisiana Fourth Circuit affirmed Krodinger's conviction and sentence on February 27, 2013, finding that Krodinger had not preserved his first pro se issue for appellate review and that all of the other claims, including those separately asserted by Marshall in the joint appeal, had no merit.[12]

The Louisiana Supreme Court denied Krodinger's counsel-filed writ application without stated reasons on October 25, 2013.[13]  The court also denied Krodinger's pro se writ application that same day, and denied his application for reconsideration on January 10, 2014.[14]  His conviction became final ninety (90) days later, on April 10, 2014, when he did not file a writ application with the United States Supreme Court.  Ott v. Johnson, 192 F.3d 510, 513 (5th Cir. 1999) (period for filling for certiorari with the United States Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)), cert. denied, 529 U.S. 1099 (2000); U.S. Sup. Ct. Rule 13(1).

---

[12]Krodinger, 128 So.3d at 270; St. Rec. Vol. 7 of 14, 4th Cir. Opinion, 2012-KA-0134, 2/27/13. The appellate court jointly considered the errors asserted by Krodinger and Marshall.  The issues asserted by Marshall are not relevant and I have not included them in this procedural history.

[13]State v. Krodinger, 124 So.3d 1090 (La. 2013); St. Rec. Vol. 14 of 14, La. S. Ct. Order, 2013-K-0608, 10/25/13; La. S. Ct. Writ Application, 13-K-608, 3/19/13; St. Rec. Vol. 12 of 14, La. S. Ct. Letter, 2013-K-608, 3/19/13.

[14]State v. Krodinger, 124 So.3d 1092 (La. 2013); State v. Krodinger, 130 So.3d 317 (La. 2013); St. Rec. Vol. 3 of 14, La. S. Ct. Order, 2013-KO-0674, 10/25/13; St. Rec. Vol. 12 of 14, La. S. Ct. Letter, 2013-KO-674, 3/27/13 (hand delivered); St. Rec. Vol. 14 of 14, La. S. Ct. Order, 2013-KO-0674, 1/10/14; Application for Reconsideration, 11/5/13 (dated 10/31/13).

On July 31, 2014, Krodinger signed and submitted an application for post-conviction relief to the state trial court in which he asserted three grounds for relief:[15] (1) The state trial court erred in allowing the introduction of a DNA certificate of analysis as evidence without the author of the certificate present. (2) The state trial court abused its discretion when it denied the motion for post-verdict judgment of acquittal based on insufficient evidence. (3) The state trial court abused its discretion when sentencing petitioner under La. Code Crim. P. art. 894.1.

The state trial court denied the application on January 15, 2015, finding the first issue barred from review as repetitive under La. Code Crim. P. art. 930.4 and the third issue inappropriate for post-conviction review under State ex rel. Melinie v. State, 665 So.2d 1172 (La. 1996).[16] The court also held that the second claim was not supported by the record, citing La. Code Crim. P. art. 930.2.

The Louisiana Fourth Circuit denied Krodinger's related writ application on April 9, 2015, finding no error in the trial court's ruling.[17] The Louisiana Supreme Court also denied Krodinger's writ application on February 19, 2016, finding the claims related to the admissibility of the DNA certificate and sufficiency of the evidence repetitive under

---

[15]St. Rec. Vol. 6 of 6, Application for Post-Conviction Relief, 5/31/13 (dated 5/8/13).

[16]St. Rec. Vol. 3 of 14, Trial Court Judgment, 1/15/15.

[17]St. Rec. Vol. 13 of 14, 4th Cir. Order, 2015-K-0252, 4/9/15; 4th Cir. Writ Application, 2015-K-0252, 3/12/15 (dated 2/12/15). In the meantime, on January 28, 2015, the Louisiana Fourth Circuit denied Krodinger's application for writ of mandamus because the state trial court had already ruled. St. Rec. Vol. 13 of 14, 4th Cir. Order, 2015-K-0024, 1/28/15; 4th Cir. Writ Application, 2015-K-0024, 1/9/15.

La. Code Crim. P. art. 930.4 and the sentencing issue not cognizable on post-conviction

review under La. Code Crim. P. art. 930.3 and State ex rel. Melinie.[18]

## II.    FEDERAL HABEAS PETITION

On March 31, 2016, after correction of certain deficiencies, the clerk of this court

filed Krodinger's federal habeas corpus petition in which he asserts the following

grounds for relief:[19] (1) The state trial court erred in allowing the introduction of a DNA

certificate of analysis as evidence without the author of the certificate present. (2) The

state trial court abused its discretion when it denied the motion for post-verdict judgment

of acquittal based on insufficient evidence. (3) The state trial court abused its discretion

when sentencing petitioner under La. Code Crim. P. art. 894.1.

The State filed a response in opposition to Krodinger's petition, asserting that the

federal petition was not timely filed and, alternatively, the sentencing issue is

procedurally barred and the remaining two claims are without merit.[20]

## III.   GENERAL STANDARDS OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L.

No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation,

---

[18]State ex rel. Krodinger v. State, 184 So.3d 679 (La. 2016); St. Rec. Vol. 14 of 14, La. S. Ct. Order, 2015-KH-0837, 2/19/16; La. S. Ct. Writ Application, 15-KH-837, 4/28/15 (dated 4/23/15).

[19]Rec. Doc. No. 3.

[20]Rec. Doc. No. 8.

including 28 U.S.C. § 2254.  The AEDPA went into effect on April 24, 1996[21] and applies to habeas petitions filed after that date.  Flanagan v. Johnson, 154 F.3d 196, 198 (5th Cir. 1998) (citing Lindh v. Murphy, 521 U.S. 320 (1997)).   The AEDPA therefore applies to Krodinger's petition, which, for reasons discussed below, is deemed filed in federal court on March 6, 2016.[22]  The threshold questions in habeas review under the amended statute are whether the petition is timely and whether petitioner's claims were adjudicated on the merits in state court; i.e., the petitioner must have exhausted state court remedies and must not be in "procedural default" on a claim.  Nobles v. Johnson, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

The State argues that Krodinger's federal petition was not timely filed and Krodinger's sentencing claim is in procedural default.  The State recognizes that the Louisiana Supreme Court barred post-conviction review of Krodinger's Confrontation Clause and sufficiency of the evidence claims under La. Code Crim. P. art. 930.4(A).

---

[21]The AEDPA, which was signed into law on that date, does not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. United States v. Sherrod, 964 F.2d 1501, 1505 (5th Cir. 1992).

[22]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. Coleman v. Johnson, 184 F.3d 398, 401 (5th Cir. 1999), cert. denied, 529 U.S. 1057 (2000); Spotville v. Cain, 149 F.3d 374, 378 (5th Cir. 1998); Cooper v. Brookshire, 70 F.3d 377, 379 (5th Cir. 1995).  Krodinger dated his signature on the form petition on March 6, 2016. This is the earliest date appearing in the record on which Krodinger could have submitted his pleadings to prison officials for mailing to a federal court.  The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See Cousin v. Lensing, 310 F.3d 843, 847 (5th Cir. 2002).

The State correctly notes that the bar under La. Code Crim. P. art. 930.4(A) is not a true procedural bar that would prevent this court from reviewing those claims.  The bar instead precludes the Louisiana courts from review of a post-conviction claim which was already "fully litigated" on direct appeal.  Bennett v. Whitley, 41 F.3d 1581 (5th Cir. 1994).  The presumption in the rule is that the claims were not new or different from something previously litigated and resolved on appeal by the higher state courts.  Id. at 1583.  As a result, "the bar imposed by article 930.4(A) is not a procedural bar in the traditional sense, nor is it a decision on the merits."  Id.  A federal habeas court simply "look[s]-through" the ruling on collateral review and considers the findings and reasons in the direct appeal where the claims were first litigated.  Id., 41 F.3d at 1582-83.

Before addressing the merits of those claims and the procedural default defense as to the sentencing claim, I find that the State's limitations defense is factually incorrect and must be rejected.

IV.   STATUTE OF LIMITATIONS

The State's limitations defense is based on the mistaken conclusion that Krodinger did not seek timely review in the Louisiana Supreme Court following his direct appeal. In fact, the record provided by the State contains copies of documents reflecting that both Krodinger and his appointed counsel filed timely writ applications in the Louisiana Supreme Court that were addressed by that court.

The Louisiana Fourth Circuit affirmed Krodinger's conviction on February 27, 2013. Under La. S. Ct. R. X§5, Krodinger had 30 days or until Monday, April 1, 2013,[23] to submit a timely writ application to the Louisiana Supreme Court.

The record reflects that Krodinger's appointed counsel hand delivered a writ application to the Louisiana Supreme Court on March 19, 2013.[24] Krodinger's pro se writ application was also hand delivered to the Louisiana Supreme Court on March 27, 2013.[25] Both writ applications were timely submitted to the state's highest court in accordance with La. S. Ct. R. X§5.

These filings establish that Krodinger's conviction became final on April 10, 2014, 90 days after the Louisiana Supreme Court denied relief on Krodinger's pro se writ application and request for reconsideration, as calculated above. He had one year from that date, or until April 10, 2015, to file his Section 2254 petition in federal court, which he did not do. Duncan v. Walker, 533 U.S. 167, 179-80 (2001). His petition would be untimely only if he was not entitled to the tolling recognized by law. The AEDPA itself provides for interruption of the one-year limitations period, in stating that "[t]he time during which a properly filed application for State post-conviction or other collateral

---

[23]The thirtieth day was Friday, March 19, 2013, which was the state recognized holiday of Good Friday. The final day of the period fell to the next business day which was Monday, April 1, 2013. Fed. R. Civ. P. 6(a)(1)(C); La. Code Crim. P. art. 13.

[24]St. Rec. Vol. 14 of 14, La. S. Ct. Writ Application, 13-K-608, 3/19/13; St. Rec. Vol. 12 of 14, La. S. Ct. Letter, 2013-K-608, 3/19/13.

[25]St. Rec. Vol. 12 of 14, La. S. Ct. Letter, 2013-KO-674, 3/27/13 (hand delivered).

review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection."   28 U.S.C. § 2244(d)(2) (emphasis added); Flanagan, 154 F.3d at 199 n.1; Duncan, 533 U.S. at 175-178.

The history outlined above establishes that Krodinger allowed only 111 days of the one-year statute of limitations period to pass after April 10, 2014, before he signed and submitted his application for post-conviction relief to the state trial court on July 31, 2014.  That matter remained pending in the state courts through February 19, 2016, when the Louisiana Supreme Court denied his related writ application.

Krodinger filed his federal petition just fifteen days later, on March 6, 2016.  He, therefore, allowed only 126 days of the AEDPA one-year period to lapse before filing his federal petition.  His federal petition is timely, and the State's limitations defense must be rejected.

## V.   PROCEDURAL DEFAULT (CLAIM NO. 3)

Krodinger asserts that the state trial court abused its discretion when sentencing him under La. Code Crim. P. art. 894.1, which outlines certain factors to be considered to support a sentence.   In reviewing this claim, the Louisiana Supreme Court procedurally barred its consideration under La. Code Crim. P. art. 930.3 and State ex rel. Melinie, which prohibit consideration of sentencing issues on post-conviction review.

Generally, a federal court will not review a question of federal law decided by a state court if the decision of that state court rests on a state ground that is both

independent of the federal claim and adequate to support that judgment.  Coleman v.

Thompson, 501 U.S. 722, 731-32 (1991); Glover v. Cain, 128 F.3d 900, 902 (5th Cir.

1997); Amos v. Scott, 61 F.3d 333, 338 (5th Cir. 1995) (citing Harris v. Reed, 489 U.S.

255, 260, 262 (1989)).  This "independent and adequate state law" doctrine applies to

both substantive and procedural grounds and affects federal review of claims that are

raised on either direct or habeas review.  Amos, 61 F.3d at 338.

Procedural default does not bar federal court review of a federal claim in a habeas

petition unless the last state court to render a judgment in the case has clearly and

expressly indicated that its judgment is independent of federal law and rests on a state

procedural bar.  Harris, 489 U.S. at 263; Glover, 128 F.3d at 902.

A.    INDEPENDENT AND ADEQUATE

For the state law procedural bar to prevent review by this federal habeas court, the

bar must be independent and adequate.  A procedural restriction is "independent" if the

state court's judgment "clearly and expressly" indicates that it is independent of federal

law and rests solely on a state procedural bar.  Amos, 61 F.3d at 338.  The United States

Fifth Circuit has held that "[a] state court expressly and unambiguously bases its denial

of relief on a state procedural default even if it alternatively reaches the merits of a

[petitioner's] claim."  Fisher v. Texas, 169 F.3d 295, 300 (5th Cir. 1999).

To be "adequate," the state procedural rule must be strictly or regularly followed

and evenhandedly applied to the majority of similar cases.  Walker v. Martin, 562 U.S.

307, 316 (2011); <u>Glover</u>, 128 F.3d at 902.  A state procedural rule "can be 'firmly established' and 'regularly followed,' - even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." (citation omitted) <u>Beard v. Kindler</u>, 558 U.S. 53, 60-61 (2009).  The question of the adequacy of a state procedural bar is itself a federal question.  <u>Beard</u>, 558 U.S. at 60 (citing <u>Lee v. Kemna</u>, 534 U.S. 362, 375 (2002)).

The Louisiana Supreme Court imposed the bar to post-conviction review of Krodinger's claims pursuant to La. Code Crim. P. art. 930.3 and <u>State ex rel. Melinie</u>. Article 930.3 sets out permissible grounds on which a defendant can seek post-conviction relief.  In <u>State ex rel. Melinie</u>, the Louisiana Supreme Court, relying on Article 930.3, ruled that claims of errors in sentencing which should be raised on direct appeal are <u>not</u> proper grounds for post-conviction relief.

This court has repeatedly held that La. Code Crim. P. art. 930.3 as interpreted by <u>State ex rel. Melinie</u> are independent and adequate state grounds for dismissal barring federal habeas corpus review.  <u>See, e.g.</u>, <u>Hull v. Stalder</u>, 234 F.3d 706, 2000 WL 1598016, at *1 (5th Cir. Sep. 28, 2000) (Table, Text in Westlaw) (recognizing Art. 930.3 and <u>Melinie</u> to be independent and adequate state grounds); <u>Johnson v. Cain</u>, No. 12-0621, 2012 WL 5363327, at *4 (E.D. La. Oct. 30, 2012) (Lemelle, J.) (Article 930.3, <u>Melinie</u> are independent and adequate); <u>Evans v. Cain</u>, No. 11-2584, 2012 WL 2565008, at *6-7 (E.D. La. Mar. 14, 2012), <u>report adopted by</u>,  2012 WL 2565001, at *1 (E.D. La.

Jul. 2, 2012); <u>Neal v. Kaylo</u>, No. 01-2211, 2001 WL 1195879, at *1 (E.D. La. Oct. 10, 2001) (Duplantier, J.) (Article 930.3 and <u>Melinie</u> are independent and adequate); <u>Leonard v. Hubert</u>, No. 00-0511, 2001 WL 333123, at *1 (E.D. La. Apr. 4, 2001) (Schwartz, J.) (same); <u>Marshall v. Hubert</u>, No. 00-0334, 2000 WL 1059820, at *1 (E.D. La. July 31, 2000) (Duval, J.) (same); <u>Ardis v. Cain</u>, No. 99-1862, 1999 WL 997497, at *1 (E.D. La. Oct. 29, 1999) (Berrigan, J.) (same).  Similarly, I find that the bar imposed under Article 930.3 and <u>State ex rel. Melinie</u> is an independent and adequate bar to review of the merits of Krodinger's claim challenging his sentence.

The state court's ruling was based on Louisiana law establishing the procedural requirements for the presentation of post-conviction claims.  <u>See Fisher</u>, 169 F.3d at 300 (state courts' clear reliance on state procedural rule is determinative of the issue).  The state court's reason for dismissal of Krodinger's sentencing claim therefore was independent of federal law and adequate to bar review of his claim in this court.

B.    <u>CAUSE AND PREJUDICE</u>

A federal habeas petitioner may be excepted from the procedural default rule only if he can show "cause" for his default and "prejudice attributed thereto," or demonstrate that the federal court's failure to review the defaulted claim will result in a "fundamental miscarriage of justice."  <u>Fisher</u>, 169 F.3d at 301 (citing <u>Coleman</u>, 501 U.S. at 748-50); <u>Amos</u>, 61 F.3d at 338-39 (citing <u>Harris</u>, 489 U.S. at 262; <u>Engle v. Isaac</u>, 456 U.S. 107, 129 (1982)).

To establish cause for a procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded his efforts to comply with the state's procedural rule. Murray v. Carrier, 477 U.S. 478, 488 (1986). The mere fact that petitioner or his counsel failed to recognize the factual or legal basis for a claim, or failed to raise the claim despite recognizing it, does not constitute cause for a procedural default. Id. at 486.

Krodinger has offered no cause for his default that would excuse the procedural bar imposed by the Louisiana courts. The record does not support a finding that any factor external to the defense prevented him from raising these claims in a procedurally proper manner. The record reflects no action or inaction by the State which prevented him from properly asserting these claims in the state courts.

"The failure to show 'cause' is fatal to the invocation of the 'cause and prejudice' exception, without regard to whether 'prejudice' is shown." Hogue v. Johnson, 131 F.3d 466, 497 (5th Cir. 1997) (citing Engle, 456 U.S. at 134 n.43). Having failed to show an objective cause for his default, the court need not determine whether prejudice existed, and petitioner has not alleged any actual prejudice. Ratcliff v. Estelle, 597 F.2d 474 (5th Cir. 1979) (citing Lumpkin v. Ricketts, 551 F.2d 680, 681-82 (5th Cir. 1977)).

C.   FUNDAMENTAL MISCARRIAGE OF JUSTICE

A petitioner may avoid procedural bar only if a fundamental miscarriage of justice will occur if the merits of his claim are not reviewed. Hogue, 131 F.3d at 497 (citing

Sawyer v. Whitley, 505 U.S. 333, 339 (1992)).  To establish a fundamental miscarriage of justice, petitioner must provide this court with evidence that would support a "colorable showing of factual innocence."  Kuhlmann v. Wilson, 477 U.S. 436, 454 (1986); accord Murray, 477 U.S. at 496; Glover, 128 F.3d at 902.  To satisfy the factual innocence standard, petitioner must establish a fair probability that, considering all of the evidence now available, the trier of fact would have entertained a reasonable doubt as to the defendant's guilt.  Campos v. Johnson, 958 F. Supp. 1180, 1195 (W.D. Tex. 1997) (footnote omitted); see Nobles, 127 F.3d at 423 n.33 (actual innocence factor requires a showing by clear and convincing evidence that, "but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.").  When the petitioner has not adequately asserted his actual innocence, his procedural default cannot be excused under the "fundamental miscarriage of justice" exception.  Glover, 128 F.3d at 903.

Krodinger presents no argument and the record contains nothing to establish his actual innocence on the underlying convictions.  For these reasons, he has failed to overcome the procedural bar, and his sentencing claim must be dismissed with prejudice as procedurally barred.

VI.   <u>STANDARDS OF A MERITS REVIEW OF THE REMAINING CLAIMS</u>

28 U.S.C. §§ 2254(d)(1) and (2) contain revised standards of review for questions of fact, questions of law and mixed questions of fact and law in federal habeas corpus proceedings.  <u>Nobles</u>, 127 F.3d at 419-20 (citing 28 U.S.C. § 2254(b) and (c)).

Determinations of questions of fact by the state court are "presumed to be correct . . . and we will give deference to the state court's decision unless it 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'"  <u>Hill v. Johnson</u>, 210 F.3d 481, 485 (5th Cir. 2000) (quoting 28 U.S.C. § 2254(d)(2)), <u>cert. denied</u>, 532 U.S. 1039 (2001).  The amended statute also codifies the "presumption of correctness" that attaches to state court findings of fact and the "clear and convincing evidence" burden placed on a petitioner who attempts to overcome that presumption.  28 U.S.C. § 2254(e)(1).

A state court's determination of questions of law and mixed questions of law and fact are reviewed under 28 U.S.C. § 2254(d)(1) and receive deference, unless the state court's decision "'was contrary to, or involved an unreasonable application of, clearly established [Supreme Court precedent.]'"  <u>Penry v. Johnson</u>, 215 F.3d 504, 507 (5th Cir. 2000) (quoting <u>Miller v. Johnson</u>, 200 F.3d 274, 280-81 (5th Cir.), <u>cert. denied</u>, 531 U.S. 849 (2000)), <u>aff'd in part, rev'd in part on other grounds</u>, 532 U.S. 782 (2001); <u>Hill</u>, 210 F.3d at 485.  The United States Supreme Court has clarified the Section 2254(d)(1) standard as follows:

Under the "contrary to" clause, a federal habeas court may grant the writ
if the state court arrives at a conclusion opposite to that reached by this
Court on a question of law or if the state court decides a case differently
than this Court has on a set of materially indistinguishable facts.  Under the
"unreasonable application" clause, a federal habeas court may grant the
writ if the state court identifies the correct governing legal principle from
this Court's decisions but unreasonably applies that principle to the facts
of the prisoner's case.

Williams v. Taylor, 529 U.S. 362, 405-06, 412-13 (2000); Penry v. Johnson, 532 U.S.

782, 792-93 (2001);  Hill, 210 F.3d at 485.  The "critical point" in determining the

Supreme Court rule to be applied "is that relief is available under § 2254(d)(1)'s

unreasonable-application clause if, and only if, it is so obvious that a clearly established

rule applies to a given set of facts that there could be no 'fairminded disagreement' on

the question." (citation omitted) White v. Woodall, __ U.S. __, 134 S. Ct. 1697, 1706-07

(2014) (citing Harrington v. Richter, 562 U.S. 86, 103 (2011), and Knowles v.

Mirzayance, 556 U.S. 111, 122 (2009)).  "Thus, 'if a habeas court must extend a rationale

before it can apply to the facts at hand,' then by definition the rationale was not 'clearly

established at the time of the state-court decision.'" White, 134 S. Ct. at 1706 (quoting

Yarborough v. Alvarado, 541 U.S. 652, 666 (2004)).

    "'A federal habeas court may not issue the writ simply because that court

concludes in its independent judgment that the state court decision applied [a Supreme

Court case] incorrectly.'" Price v. Vincent, 538 U.S. 634, 641 (2003) (quoting Woodford

v. Visciotti, 537 U.S. 19, 24-25 (2002)) (brackets in original); Bell v. Cone, 535 U.S.

685, 699 (2002).  Rather, under the "unreasonable application" standard, "the only

question for a federal habeas court is whether the state court's determination is objectively unreasonable." Neal v. Puckett, 286 F.3d 230, 246 (5th Cir. 2002), cert. denied, sub nom, Neal v. Epps, 537 U.S. 1104 (2003). The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner. Price, 538 U.S. at 641 (quoting Woodford, 537 U.S. at 24-25); Wright v. Quarterman, 470 F.3d 581, 585 (5th Cir. 2006).

VII.   DNA REPORT/CONFRONTATION RIGHTS (CLAIM NO. 1)

Krodinger alleges that his constitutional rights were violated when the DNA certificate of analysis was improperly admitted into evidence without allowing him an opportunity to confront and cross-examine the analyst who conducted the testing and prepared the report.

The trial record reflects that the State called Michael Cariola, Senior Vice President, Director of Forensic Operations at Bode Technology, who was accepted by stipulation as an expert in the field of DNA analysis.[26] The DNA report on which he relied was signed by an analyst who was under his supervision, but the subordinate analyst was not present during the extraction or testing and did not prepare the report.[27]

---

[26]St. Rec. Vol. 10 of 14, Trial Transcript, pp. 67, 70, 3/28/11.

[27]Id., pp. 77-78.

When the report was introduced by the State, Krodinger's counsel objected.[28]  The state trial court overruled the objection and allowed the State to admit the DNA report and proceed to question Cariola.[29]  The court later allowed defense counsel to place the reasons for the objection on the record.[30]

Defense counsel argued that Krodinger was being denied his confrontation rights with regard to the veracity of the report, including unanswered questions about the techniques used and the chain of custody, and noted that an objection to the use of the report had been filed.  In response, the State asserted that the report had not been presented pursuant to Louisiana's notice-and-demand statute, rendering Krodinger's written objection moot.[31]  The State further argued that identification of the DNA donor was not at issue, since Krodinger admitted that he had sex with the victim, leaving the issue of her consent as the only question for the jury to resolve.  The State also noted that the defendant did not subpoena anyone from the lab and was given a full opportunity to cross-examine Cariola.

On direct appeal, Krodinger's appointed counsel asserted that the state trial court erred in allowing the prosecutor to admit the DNA report in violation of Krodinger's

---

[28]Id., p. 71.

[29]Id., p. 71.

[30]Id., pp. 83-84.

[31]Id., pp. 85-86.

confrontation rights.  The Louisiana Fourth Circuit concluded that the DNA certificate of analysis was testimonial in nature and subject to the parameters of the Confrontation Clause as interpreted in Crawford v. Washington, 541 U.S. 36 (2004).  The court also noted that Krodinger had filed the notice of objection to the admissibility of the report without the supporting testimony of the preparer.

Nevertheless, the court determined that, although the certificate was not admissible, its introduction was harmless error under Chapman v. California, 386 U.S. 18 (1967).  In doing so, the court resolved that the identity of the sperm donor was not at issue since Krodinger testified at trial that he in fact had sex with S.B.  The only issue for the jury to resolve was whether the sexual activity was consensual.  This was the last reasoned state court opinion on the issue.  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991) (when the last state court judgment does not indicate whether it is based on procedural default or the merits of a federal claim, the federal court will presume that the court relied upon the same grounds as the last reasoned state court opinion).

Claims asserting that a defendant's confrontation rights were violated present a mixed question of law and fact.  Fratta v. Quarterman, 536 F.3d 485, 499 (5th Cir. 2008); Horn v. Quarterman, 508 F.3d 306, 312 (5th Cir. 2007).  The court must determine whether the state courts' denial of relief was contrary to or an unreasonable application of federal law as determined by the Supreme Court.  Buckenberger v. Cain, 471 F. App'x 405, 406 (5th Cir. 2012) (citing Fratta, 536 F.3d at 499).

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." The Confrontation Clause therefore prohibits admission of "testimonial statements of a witness who did not appear at trial unless he was unavailable to testify, and the defendant had a prior opportunity for cross-examination." Crawford, 541 U.S. at 53-54. While the Supreme Court in Crawford declined to provide a comprehensive definition of "testimonial," it did indicate that, "[w]hatever else the term covers, it applies at a minimum to prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." Id. at 68. The Crawford Court also indicated that testimonial statements include "ex parte in-court testimony or its functional equivalent - that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially." Id. at 51; see generally Bullcoming v. New Mexico, 564 U.S. 647, 657-58 (2011) (a defendant has the right to cross-examine the person who actually tested or examined evidence).

The United States Supreme Court has held that an expert's report is "functionally identical" to a testimonial statement under Crawford. Melendez-Diaz v. Massachusetts, 557 U.S. 305, 310-11 (2009). An expert's report, therefore, is not admissible when the expert who prepared the report does not appear at trial and the defendant has not had a prior opportunity for cross-examination. Id. In Bullcoming, 564 U.S. at 657-58, the

Supreme Court held that a defendant's right of confrontation is violated when the expert who testifies at trial did not participate in or observe the testing or examination underlying the report, and the expert who actually performed the testing or examination does not testify.  However, the Supreme Court has recognized that a defendant who is placed on notice of the prosecutor's intent to use a forensic report also is on notice that he must exercise his right of confrontation to protect the right.

> The defendant always has the burden of raising his Confrontation Clause objection; notice-and-demand statutes simply govern the time within which he must do so.  States are free to adopt procedural rules governing objections.  See Wainwright v. Sykes, 433 U.S. 72, 86-87, 97 S. Ct. 2497, 53 L. Ed. 2d 594 (1977).  It is common to require a defendant to exercise his rights under the Compulsory Process Clause in advance of trial, announcing his intent to present certain witnesses.  See Fed. Rules Crim. Proc. 12.1(a), (e), 16(b)(1) (C). . . . There is no conceivable reason why he cannot similarly be compelled to exercise his Confrontation Clause rights before trial.  See Hinojos-Mendoza v. People, 169 P.3d 662, 670 (Colo. 2007)(discussing and approving Colorado's notice-and-demand provision).

Melendez-Diaz, 557 U.S. at 327.

The Court revisited its approval of the so-called "notice-and-demand procedures," adopting the concept that these procedures "typically 'render . . . otherwise hearsay forensic reports admissible[,] while specifically preserving a defendant's right to demand that the prosecution call the author/analyst of [the] report.'"  Bullcoming, 564 U.S. at 666 (quoting Melendez-Diaz, 557 U.S. at 326-27).  Thus, the Supreme Court has mandated that notice-and-demand procedures imposed by the states are sufficient to protect a defendant's rights where they "permit the defendant to assert (or forfeit by silence) his

Confrontation Clause right after receiving notice of the prosecution's intent to use a forensic analyst's report."  Melendez-Diaz, 557 U.S. at 326.

Louisiana law incorporates this type of notice-and-demand procedure.  Under Louisiana law, forensic laboratories are authorized to provide proof of examination and analysis of physical evidence by providing a certificate from the person conducting the examination or analysis which provides certain particulars related to the transfer of the evidence and the details and results of the examination and analysis.  La. Rev. Stat. § 15:499.  When the State intends to introduce a laboratory certificate, the prosecutor must provide written notice of its intent to do so at least 45 days before trial.  La. Rev. Stat. § 15:501.  If the State's certificate and notice comply with the provisions of La. Rev. Stat. § 15:499 and § 15:501, the certificate is admissible and shall be received into evidence as prima facie proof of the facts it contains.  La. Rev. Stat. § 15:500.

However, within 30 days of the filing of notice by the prosecutor, the defendant may file a written demand to have the person who conducted the examination and analysis appear to testify.  La. Rev. Stat. § 15:501.  When this demand is made, the certificate is not deemed prima facie evidence and the analyst must testify to establish the test results.  Id.  These provisions constitute Louisiana's "notice and demand" procedure. State v. Cunningham, 903 So.2d 1110, 1120-21 (La. 2005).

In Cunningham, the Louisiana Supreme Court rejected defendants' claim that his confrontation right was denied when the laboratory analyst did not testify and the report

24

was entered into evidence.  The court held, with analysis similar to <u>Melendez-Diaz</u> and <u>Bullcoming</u>, that Louisiana's notice-and-demand procedure did not infringe on the constitutional right to confrontation.  <u>Id</u>. at 1121.  The court held that, to preserve confrontation rights, a defendant need only make a timely demand for testimony after the notice is filed.  <u>Id</u>.  This automatically renders the certificate of no independent evidentiary value and requires the State to call the analyst to prove its case.  <u>Id</u>.

Thus, under Louisiana law, if the prosecution complies with the notice-and-demand provisions, the laboratory certificate and report are admissible prima facie proof, unless the defendant makes timely written demand for the analyst to testify.  Without doing so, the defendant waives his Sixth Amendment rights under the Confrontation Clause.  <u>Id</u>. at 1121; <u>State v. Simmons</u>, 78 So.3d 743 (La. 2012) (citing <u>Melendez-Diaz</u>). Louisiana's scheme is the kind of notice-and-demand procedure recognized by the United States Supreme Court as protective, not violative, of the Sixth Amendment's Confrontation Clause.

In Krodinger's case, the record reflects that the State did <u>not</u> provide notice of intent to present or use the DNA certificate of analysis for purposes of La. Rev. Stat. § 15:499 or the notice-and-demand provisions.[32]  Without a notice from the State, Krodinger's objection to the use of the report under La. Rev. Stat. § 15:499 et seq. was rendered meaningless under Louisiana law.  <u>See</u> <u>State v. Cavalier</u>, 171 So.3d 1117, 1125

---

[32]St. Rec. Vol. 10 of 14, Trial Transcript, p. 85, 3/28/11.

(La. App. 4th Cir. 2015) (holding that the premature filing of a demand by the defendant under La. Rev. Stat. § 15:501 <u>before</u> the State files its notice does not comply with Louisiana notice-and-demand statutes to preserve the defendant's confrontation rights). However, under federal law, Krodinger's confrontation rights were still entitled to protection.

The record reflects that the State introduced the DNA report and its results reached without being compelled to comply with the notice and demand requirements.  Both before and during trial, Krodinger clearly made known his intent to exercise his confrontation rights to question the lab analyst who actually prepared the DNA report, rather than the lab supervisor.  Once he invoked his confrontation rights, the holdings in <u>Bullcoming</u> and <u>Melendez-Diaz</u> dictate that Krodinger, under the Confrontation Clause, must have been provided the opportunity to question the analyst who prepared the report, and he was not provided that opportunity. The Louisiana Fourth Circuit correctly concluded under <u>Crawford</u> that the DNA report should <u>not</u> have been admitted and that doing so was error.

Nevertheless, as the state appellate court also correctly concluded, Confrontation Clause violations are subject to harmless error analysis.  <u>Fratta</u>, 536 F.3d at 507-08; <u>Bullcoming</u>, 564 U.S. at 668 n.11.  On direct review, the Louisiana Fourth Circuit relied on the <u>Chapman</u> standards, 386 U.S. at 18, to find that admitting the DNA report was harmless error.  <u>Chapman</u> is the appropriate United States Supreme Court precedent in

determining harmless error on direct review.  See Fry v. Pliler, 551 U.S. 112, 121-22 (2007).

Under Chapman, an error is harmless when it can be shown beyond a reasonable doubt that the complained-of error did not contribute to the verdict.  Chapman, 386 U.S. at 24.  The Louisiana Fourth Circuit held that introduction of the DNA certificate of analysis was harmless error because the identity of the sperm donor was not at issue in light of Krodinger's admission that he had sex with S.B. in the car.  The court's conclusion was a reasonable application of Chapman and not otherwise contrary to federal law.

However, "in 2254 proceedings a court must assess the prejudicial impact of constitutional error in a state-court criminal trial under the 'substantial and injurious effect' standard set forth in Brecht[ v. Abrahamson, 507 U.S. 619 (1993)] whether or not the state appellate court recognized the error and reviewed it for harmlessness under the 'harmless beyond a reasonable doubt' standard set forth in Chapman."  Fry, 551 U.S. at 121-22 (internal citations omitted).  Under Brecht, a federal court may grant habeas relief on account of constitutional error only if the error had a "substantial and injurious effect or influence in determining the jury's verdict" and resulted in "actual prejudice."  Id. at 637; see Delaware v. Van Arnsdall, 475 U.S. 673, 684 (1986) (if the reviewing court determines beyond a reasonable doubt that the error was harmless, then the petitioner is not entitled to relief.).  In assessing the error, federal habeas courts

27

> consider the importance of the witness' testimony in the prosecution's case,
> whether the testimony was cumulative, the presence or absence of evidence
> corroborating or contradicting the testimony of the witness on material
> points, the extent of cross-examination otherwise permitted, and of course,
> the overall strength of the prosecution's case.

United States v. Edwards, 303 F.3d 606, 623 (5th Cir. 2002) (citation omitted).  Because
the other evidence against Krodinger in this case was overwhelming, the state courts
reasonably determined that introduction of the DNA report was harmless.

    In reaching its harmless error conclusion, the Louisiana Fourth Circuit pointed to
the most compelling point, which was Krodinger's own statements and testimony that
he did have sex with S.B. in the car.[33]  The entire defense presented by Krodinger and his
co-defendant Marshall was that S.B., who was extremely intoxicated and being driven
to an in-patient detox program, wanted to have sex before she went to the hospital.  They
also asserted that, when Marshall lost his erection, S.B. insisted that Krodinger satisfy
her, and he complied.  In other words, the defense presented by Krodinger and Marshall
was that S.B. initiated and had consensual sex with both men.

    The DNA results did nothing but confirm what Krodinger had already confessed,
that he had sex with S.B. and ejaculated.  As conceded at trial both by Cariola and the
State's other expert in serology/forensic biology, nothing in the DNA report or the
presence of spermatozoa in the anal and vaginal samples could answer the question
whether the victim had consensual sex with Krodinger.

---

[33]St. Rec. Vol. 11 of 14, Trial Transcript, p. 128, 3/29/11.

The DNA report and related testimony were essentially cumulative of Krodinger's (and Marshall's) testimony and effectively was unnecessary to prove any element of the rape. It was not determinative of or even relevant to the key issue of consent. Krodinger has not shown that introduction of the DNA report without testimony from the analyst had a substantial or injurious effect or influence on the verdict or caused actual prejudice to him. For these reasons, the state courts' finding of harmless error and denial of relief were neither contrary to, nor an unreasonable application of, Supreme Court precedent. Krodinger is not entitled to relief on this issue.

VII.   DENIAL OF THE MOTION FOR POST-VERDICT JUDGMENT OF ACQUITTAL/SUFFICIENCY OF THE EVIDENCE (CLAIM NO. 2)

Krodinger asserts that the state trial court erred in denying his motion for post-verdict judgment of acquittal because the evidence was insufficient to establish the second count of simple rape. Construed broadly, his argument is that S.B. testified about only one rape by Krodinger, which occurred when he straddled the console to have anal intercourse, and that there was no evidence that he vaginally penetrated her to constitute a second simple rape.

Krodinger asserted this claim in his supplemental pro se brief on direct appeal to the Louisiana Fourth Circuit. Without comment on the denial of the motion for post-verdict judgment of acquittal, the court addressed the sufficiency of the evidence, citing the standards set forth in Jackson v. Virginia, 443 U.S. 307 (1979), and related state law. The court held that S.B.'s testimony about the incident, coupled with her physical

29

bruising, was sufficient proof for a reasonable jury to place greater weight on her testimony over that of the defendants and conclude that she was raped.  This was the last reasoned opinion on the issue.

To the extent Krodinger claims that the state trial court improperly denied his motion for post-verdict judgment of acquittal, that claim does not warrant federal habeas corpus relief.  A state court's denial of that type of post-trial motion does not violate a federal constitutional right. Haygood v. Quarterman, 239 F. App'x 39, 42 (5th Cir. 2007) (citing Dickerson v. Guste, 932 F.2d 1142, 1145 (5th Cir. 1991)).  In addition, a federal court does "not sit as [a] 'super' state supreme court in a habeas corpus proceeding to review errors under state law." Wilkerson v. Whitley, 16 F.3d 64, 67 (5th Cir.1994) (citation and quotation omitted); see Swarthout v. Cooke, 536 U.S. 216, 861 (2011) (federal habeas relief does not lie for errors of state law).

Moreover, Louisiana law concerning such a motion is consistent with the constitutional standards set in Jackson.  Under Louisiana law, a post-verdict judgment of acquittal may "be granted only if the court finds that the evidence, viewed in a light most favorable to the state, does not reasonably permit a finding of guilty." La. Code Crim P. art. 821(B). Thus, the motion is evaluated under a standard virtually identical to insufficient evidence claims under Jackson.  State v. Durand, 963 So.2d 1028, 1033 (La. App. 5th Cir. 2007); State v. Jones, 952 So.2d 705, 707 (La. App. 4th Cir. 2006) (citing State v. Thibodeaux, 750 So.2d 916, 926 (La. 1999)); State v. Williams, 891 So.2d 26,

30 (La. App. 4th Cir. 2004) (citing State v. Brown, 620 So.2d 508, 513-514 (La. App. 4th Cir. 1993)).

For purposes of federal habeas review, this court must evaluate Krodinger's sufficiency of the evidence claim under the United States Supreme Court standards in Jackson, which was applied and followed by the Louisiana Fourth Circuit.  Under Jackson, a federal habeas court addressing an insufficiency of the evidence claim must determine, after viewing the evidence in the light most favorable to the prosecution, whether a rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt.  Jackson, 443 U.S. at 319; Williams v. Cain, 408 F. App'x 817, 821 (5th Cir. 2011); Perez v. Cain, 529 F.3d 588, 594 (5th Cir. 2008). Thus, to determine whether the commission of a crime is adequately supported by the record, the court must review the substantive elements of the crime as defined by state law.  Perez, 529 F.3d at 594 (citing Jackson, 443 U. S. at 324 n. 16).

The court's consideration of the sufficiency of the evidence extends only to what was presented at trial.  See McDaniel v. Brown, 558 U.S. 120, 131, 134 (2010) (recognizing that a reviewing court must consider the trial evidence as a whole under Jackson); Johnson v. Cain, 347 F. App'x 89, 91 (5th Cir. 2009) (Jackson standard relies "upon the record evidence adduced at the trial") (quoting Jackson, 443 U.S. at 324). Review of the sufficiency of the evidence, however, does not include review of the weight of the evidence or the credibility of the witnesses, because those determinations

31

are the exclusive province of the jury.  United States v. Young, 107 F. App'x 442, 443

(5th Cir. 2004) (citing United States v. Garcia, 995 F.2d 556, 561 (5th Cir. 1993)); see

Jackson, 443 U.S. at 319 (noting that it is the jury's responsibility "to resolve conflicts

in the testimony, to weigh the evidence, and to draw reasonable inferences from basic

facts to ultimate facts").  All credibility choices and conflicting inferences must be

resolved in favor of the verdict.  Ramirez v. Dretke, 398 F.3d 691, 695 (5th Cir. 2005).

A federal habeas court is not authorized to substitute its interpretation of the

evidence or its view of the credibility of witnesses in place of the fact-finder.  Weeks v.

Scott, 55 F.3d 1059, 1062 (5th Cir. 1995); Alexander v. McCotter, 775 F.2d 595, 598

(5th Cir. 1985).  In addition, "[t]he Jackson inquiry 'does not focus on whether the trier

of fact made the correct guilt or innocence determination, but rather whether it made a

rational decision to convict or acquit.'"  Santellan v. Cockrell, 271 F.3d 190, 193 (5th

Cir. 2001) (quoting Herrera v. Collins, 506 U.S. 390, 402 (1993)).

A claim of insufficient evidence presents a mixed question of law and fact.  Perez,

529 F.3d at 594; Maes v. Thomas, 46 F.3d 979, 988 (10th Cir. 1995).  Therefore, this

court must examine whether the state courts' denial of relief was contrary to or an

unreasonable application of United States Supreme Court precedent.

Krodinger and Marshall were each found guilty of two counts of simple rape, one

anal and one vaginal.  Krodinger contends that there was insufficient evidence to prove

that he committed a vaginal rape.  At the time, a rape was defined under La. Rev. Stat.

32

§ 14:41 as "the act of anal, oral, or vaginal sexual intercourse with a male or female person committed without the person's lawful consent."  The law did not require emission and "any sexual penetration, when the rape involves vaginal or anal intercourse, however slight, is sufficient to complete the crime." Id.; State v. Douglas, No. 2014-KA-19, 2014 WL 3843933, at *2 (La. App. 1st Cir. Jun. 9, 2014).  Simple rape was defined in relevant part by La. Rev. Stat. § 14:43(A) (West 2011)[34] as follows:

> Simple rape is a rape committed when the anal, oral, or vaginal sexual intercourse is deemed to be without the lawful consent of a victim because it is committed under any one or more of the following circumstances:
>
> (1)    When the victim is incapable of resisting or of understanding the nature of the act by reason of a stupor or abnormal condition of mind produced by an intoxicating agent or any cause and the offender knew or should have known of the victim's incapacity. [...]

The phrase "stupor or abnormal condition of mind produced by an intoxicating agent" does not require that the victim be unconscious or so incognizant as to render her unaware that she is being raped, and a victim's verbal protests during the rape do not mean that she necessarily was capable of effectively resisting the rape.  State v. Clouatre, 110 So.3d 1094, 1099 (La. App. 1st Cir. 2012).  In Louisiana, the testimony of the sex offense victim alone is sufficient to establish the elements of the offense.  State v. Lilly, 111 So.3d 45, 62 (La. App. 1st Cir. 2012); State v. Hampton, 716 So.2d 417, 418 (La. App. 1st Cir. 1998).

---

[34]This provision was amended in 2015 and identified as third degree rape.

Simple rape is a general intent crime, which exists when there is specific intent to actively cause the criminal consequences or may be inferred from the circumstance of the event and proved by direct or circumstantial evidence. La. Rev. Stat. §14:10(2); State v. Brokenberry, 942 So.2d 1209 (La. App. 2d Cir. 2006); State v. Culp, 17 So.3d 429 (La. App. 2d Cir. 2009); see also, State v. Crawson, No. 2010-KA-1283, 2011 WL 2135102, at *6 (La. App. 1st Cir. Feb. 11, 2011) (addressing rape). Louisiana law further provides that "[a]ll persons concerned in the commission of a crime, whether present or absent, and whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La. Rev. Stat. § 14:24. Thus, the State may prove a defendant guilty of rape by showing that he served as a principal to the crime, and the defendant need not actually have sexual intercourse with the victim to be found guilty of the crime. State v. Garcia, 26 So.3d 159, 163 (La. App. 2d Cir. 2009) (citing State v. Evans, 669 So.2d 719, 724 (La. App. 2d Cir. 1996)).

In this case, S.B. testified that she had been drinking extensively since the day before she was to report for the hospital detox program.[35] Her roommate arranged for her to ride with Marshall, whom S.B. knew from AA meetings, to the hospital in New

---

[35] St. Rec. Vol. 11 of 14, Trial Transcript, pp. 28-29, 30-31 (S.B.), 3/29/11.

Orleans to check into the detox program.[36]  When Marshall picked her up, someone she did not know was driving his Jeep.  She and Marshall sat in the back seat with S.B. behind the driver's seat.[37]  As they rode along the Highway 11 bridge, Marshall began removing her clothes and did not stop although she screamed for him to stop.[38]  He pulled down her pants and pushed her back on the seat and vaginally raped her.[39]

As they were getting off the bridge, the driver pulled over on the side of the interstate.[40]  He then straddled the console in between the front seats and anally raped her.[41]  At the same time, Krodinger pushed her head down, Marshall grabbed her hair and they forced her to perform oral sex on Marshall.  She also stated that Krodinger may have also raped her vaginally while he was anally raping her.[42]  Following this, a man knocked on the window of the Jeep to ask if they needed help, and she was able to escape.[43]  She

---

[36]Id., pp. 25, 28-29, 30-31 (S.B.).

[37]Id., p. 31 (S.B.).

[38]Id., p. 32 (S.B.).

[39]Id., p. 32 (S.B.).

[40]Id., p. 33 (S.B.).

[41]Id., p. 33 (S.B.).

[42]Id., p. 70 (S.B.).

[43]Id., p. 33 (S.B.).

also testified regarding her physical bruising which was captured in pictures presented at trial.[44]

Thus, the jury received evidence that Krodinger and Marshall jointly engaged in the rapes, including that both men had vaginal or anal penetration; that S.B. did not consent and was physically unable to resist due in part to her intoxicated state, a condition they both knew about.  Accepting these facts in the light most favorable to the State, there was sufficient evidence for a reasonable jury to find that S.B.'s testimony was credible and that she was anally raped by Krodinger and vaginally raped by Marshall, and that the two men were principals to both of the rapes.  The jury simply did not believe the defense theories and arguments in reaching its guilty verdict, which is properly supported by the evidence.  It is not for this court on federal habeas review to reevaluate witness credibility and evidence or substitute its judgment for that of the jury, as Krodinger now asks the court to do.

The state courts' rejection of Krodinger's insufficient evidence claim was not contrary to or an unreasonable application of Supreme Court law.  He is not entitled to relief on this claim.

---

[44]Id., pp. 35, 38 (S.B.).

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Krodinger's petition for issuance of a writ of habeas corpus under 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE**.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415, 1430 (5th Cir. 1996) (en banc) (citing 28 U.S.C. § 636(b)(1)).[45]

New Orleans, Louisiana, this ___29th___ day of September, 2016.

JOSEPH C. WILKINSON, JR.
UNITED STATES MAGISTRATE JUDGE

---

[45]Douglass referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.